UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
IRAN COLON,                     )
            Plaintiff,          )
                                )
        v.                      )      CIVIL ACTION
                                )      NO. 19-11553-WGY
ANDREW SAUL, Commissioner of the)
Social Security Administration, )
                                )
            Defendant.          )
                                )
_____


YOUNG, D.J.                                    May 22, 2020

## MEMORANDUM & ORDER

### I.   INTRODUCTION

Iran Colon ("Colon") brings this action under 42 U.S.C. §
405(g) challenging the decision of the Commissioner of the
Social Security Administration (the "Commissioner") denying him
social security disability benefits.  Compl. ¶¶ 3, 6, ECF No. 1.
He argues that the decision was erroneous because it conflicted
with the mandate of a previous court order remanding the case
for further proceedings.  Mot. Reverse ("Pl.'s Mot.") 5-9, ECF
No. 14.  The Commissioner argues that the decision was
consistent with the remand order.  Def.'s Mem. Supp. Mot. Affirm
Comm'r's Decision ("Def.'s Mot.") 11-12, ECF No. 17.

This Court rules that the Commissioner's decision was
inconsistent with the remand order, and that this error was not

harmless.  Accordingly, the Court remands this case to the
Social Security Administration ("SSA") for further proceedings
consistent with this opinion.

### A.   Factual Background

#### 1.   Personal and Vocational History

Colon was 42 years old when the hearing officer issued his
most recent determination and was 35 when his insured status
expired.  Administrative R. ("Admin. R.") 790, 1012-1014, ECF No
13.[1]  Colon attended some college, id. at 811, and is not fluent
in English, id. at 787.  He worked as an auto mechanic, a sales
representative for auto parts, and a combined driver and handler
for his father's meat company.  Id. at 1048-55.  He last engaged
in substantial gainful activity in December 2006.  Id. at 781.

#### 2.   Medical History

Because the primary issue in this case is whether the
hearing officer exceeded the scope of the remand, the medical
history will not be treated in exhaustive detail.  Colon is
diagnosed with degenerative spinal changes, fibromyalgia,
asthma, depression, and anxiety.  Id. at 29.  Between the date

---

[1] The Administrative Record spans multiple docket entries,
labeled ECF Nos. 13-1 through 13-43.  For the sake of
simplicity, this Court cites page numbers in the continuously
paginated record as a whole, omitting reference to the ECF
numbers of specific exhibits.

of the first and second hearings, Colon was diagnosed with a
functional neurological disorder.  Id. at 1327.

### B.   Procedural History

Colon filed an initial application for Social Security
Disability Insurance Benefits ("SSDI") and Supplemental Security
Income ("SSI") in September 2014.  Id. at 199-207, 208-14.  The
applications were denied initially and upon reconsideration.
Id. at 26.  Colon then filed a request for a hearing, which was
held on May 10, 2016.  Id.  The hearing officer issued an
unfavorable decision on August 31, 2016.  Id. at 37.

The hearing officer found that Colon had the following
severe impairments: "degenerative spinal changes, fibromyalgia,
asthma, depressive and anxiety disorders, and history of drug
abuse."  Id. at 29.  The hearing officer determined, however,
that Colon did not satisfy the requirements of step three of the
five-step sequential evaluation for determining disability.
Id.; see also 20 C.F.R. § 404.1520(a).  Colon was determined to
have a residual functional capacity ("RFC") of performing light
work with the following limitations:

> [He] can stand/walk for no more than 3 hours total; no
> more than occasionally balance, stoop, kneel, crouch,
> crawl, and climb and climb [sic]
> ladders/ropes/scaffolds; bilaterally handle no more
> than occasionally; must avoid exposure to temperature
> extremes and concentrated exposure to pulmonary
> irritants; must avoid hazards such as moving
> machinery, unprotected heights, and slippery or uneven

[3]

surfaces; and can perform no more than routine tasks,
cannot perform detailed instructions.

Admin R. at 31-32.  The hearing officer determined that based on
the above RFC, Colon could not return to past relevant work, but
that there were jobs available in the national economy that he
could perform.  Id. at 36-37.

Colon appealed the unfavorable decision to the Appeals
Council, which denied review.  Id. at 1-7, 196-98.  Colon then
filed a complaint in another session of this Court for judicial
review of the decision.  Id. at 879-84.  The Commissioner moved
to remand the case, providing a memorandum of reasoning and
drafting the order that Judge Burroughs approved on July 5,
2018.  Id. at 903-08.[2]

The Appeals Council issued an order on July 26, 2018
remanding the case to the same hearing officer who made the
original decision.  Id. at 909-15.  In its order, the Appeals
Council observed that "[f]urther development is warranted with
respect to the jobs identified at step five."  Id. at 913.  It
further noted that supplemental vocational expert testimony was
needed to reconcile the inconsistencies between the assessed RFC
and the jobs the vocational expert identified.  Id. at 914.  In

_____

[2] This Court treats the previous order of Judge Burroughs as
adopting the reasoning in the memorandum supporting the
Commissioner's unopposed motion to remand and the proposed
order.  See infra II.B.2.a.

service of these ends, the Appeals Council directed the hearing officer to, "[g]ive further consideration to the claimant's maximum residual functional capacity" and "[o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." Id.

The hearing officer held a second hearing on November 6, 2018. Id. at 801-47. He issued a second unfavorable decision on April 3, 2019. Id. at 772-800. The hearing officer found the following severe impairments (none of which rose to the level of a listing): "a functional neurological disorder, degenerative disc disease, fibromyalgia, asthma, depression, and an anxiety-related disorder." Id. at 781. As for Colon's RFC, the hearing officer determined that Colon could perform light work except:

> he cannot climb ladders, ropes or scaffolds, but can
> occasionally climb ramps or stairs. The claimant can
> occasionally balance, crawl, stoop, kneel, crouch, or
> crawl. He can use bilateral hands frequently for
> handling. The claimant should avoid extreme
> temperatures, concentrated exposure to pulmonary
> irritants and hazards such as moving machinery,
> unprotected heights, and slippery/uneven surfaces.
> The claimant is limited to the performance of simple,
> routine, repetitive tasks.

Id. at 782-83. Based on the above RFC, the hearing officer determined that Colon could not return to past relevant work, but that there were jobs available in the national economy that

he could perform.  Id. at 786-87.  Colon was thus found not
disabled.  Id. at 789-90.

Colon waived Appeals Council review and filed the complaint
with this Court on July 16, 2019.  Id. at 767; Compl. ¶¶ 1-6.
The Commissioner filed an answer on October 29, 2019.  Def.'s
Answer Compl. ("Answer"), ECF No. 12.  Colon moved to reverse
the decision of the Commissioner and the Commissioner cross-
moved for affirmance of the decision. Pl.'s Mot.; Def.'s Mot.
Colon filed a response on March 4, 2020.  Pl.'s Resp. Def's Mot.
Affirm ("Pl.'s Resp."), ECF No. 19.

## II.  ANALYSIS

### A.   Social Security Law Context

The Social Security Act provides that hearing officers must
evaluate claims according to a five-step Sequential Evaluation.
20 C.F.R. § 404.1520(a)(1).

The first step is determining whether the claimant performs
substantial gainful activity.  Id. § 404.1520(a)(4)(i).

At the second step, the hearing officer determines whether
impairments are "severe."   Id. § 404.1520(a)(4)(ii).   An
impairment or combination of impairments is severe if it
significantly limits an individual's ability to engage in basic
work activities.  Id. § 404.1520(c).  The standard at the second
step is not meant to be demanding.  McDonald v. Secretary of
Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986).

At step three, the hearing officer assesses whether the claimant's impairments meet or equal the severity of a listing and satisfy the duration requirement.  20 C.F.R. § 404.1520(a)(4)(iii).  Listings are Social Security standards of diagnoses followed by elements that establish that the symptoms associated with the diagnosis are severe enough that the claimant is presumptively disabled.  Id. § 404.1525.

If a claim does not pass step three, the inquiry does not end.  Id. § 404.1520(e).  Instead, the hearing officer proceeds to assesses the RFC of the claimant.  Id.  The RFC reflects the claimant's ability to do physical and mental work-related tasks on a sustained basis.  Id. § 404.1545(a)(1).  RFC determinations must consider all the claimant's impairments (including severe and non-severe impairments).  Id. § 404.1545(a)(2).  The hearing officer then proceeds to step four and uses the RFC determination she made to decide whether the claimant can return to past relevant work.  Id. § 404.1520(e)-(f).

If the claimant's RFC would not allow her to return to past relevant work, the hearing officer continues to step five of the sequential evaluation.  Id. § 404.1520(a)(4)(v).  At step five, the burden of proof shifts to the Social Security Administration to establish that a person of the same age, education, work experience and RFC could do work that exists in significant numbers in the national economy.  Id. § 404.1560(c)(2); id. §

404.1512(b)(3).  In order to meet this burden, the Social Security Administration uses its Medical Vocational Guidelines (the "grid"): a comprehensive list of rules that tell a hearing officer whether a claimant is disabled based on age, work-experience, education, and exertional capacity.  20 C.F.R. § 404.1569a(b); 20 C.F.R. Part 404, Subpart P, App. 2.  The grid has five categories of exertional categories: sedentary, light, medium, heavy, and very heavy.  Id.

Since claimant profiles are often more complicated than the categories for which the grids account, typically the Social Security Administration has a vocational expert testify at the hearing regarding the requirements and availability of jobs for people with RFCs corresponding to the claimant's.  See 20 C.F.R. § 404.1566(e).  The vocational expert may rely on her experience during testimony.  Biestek v. Berryhill, 139 S. Ct. 1148, 1152-53 (2019) ("When offering testimony, the experts may invoke . . . data otherwise developed from their own experience . . . .") (internal quotation marks and citation omitted).

The Social Security Administration also relies upon the Dictionary of Occupational Titles ("DOT"), a comprehensive list of jobs and descriptions, for the Vocational Expert to identify jobs that the claimant might be able to perform.  See Dep't of Labor, Dictionary of Occupational Titles, https://occupationalinfo.org/ (last visited May 19, 2020); 20

C.F.R. § 404.1566(d)(1); Purdy v. Berryhill, 887 F.3d 7, 14 (1st Cir. 2018). DOT descriptions are presumed to describe accurately the work as typically performed. 20 C.F.R. § 404.1566(d)(1). Vocational expert testimony that deviates from the DOT descriptions necessitates an explanation. SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). The DOT has a standardized scheme for denoting how strenuous a particular job may be. DOT App. C. The DOT denotes occupations as sedentary, light, medium, heavy, and very heavy, which corresponds with the grids and the grids' definitions. 20 C.F.R. § 404.1569a(a).

If the hearing officer finds that work exists in significant numbers in the national economy which the claimant is capable of performing given her RFC, age, education, and work experience, then the hearing officer will find the claimant not disabled. 20 C.F.R. §§ 404.1520(4)(v), 404.1566(b).

**B.    The Scope of the Hearing Officer's Review**

**1.    Standard of Review for Hearing Officer's Scope of Review.**

Under the Social Security Act, claimants may seek judicial review of unfavorable decisions. 42 U.S.C. § 405(g). The district court may, on motion of the Commissioner, remand the case to the agency for further action. See id. After the Secretary acts on remand, he must file with the court additional or modified findings of fact and decision and a

transcript of the additional record.  Id.  The Supreme Court

characterized this scheme as "a degree of direct interaction

between a federal court and an administrative agency alien to

traditional review of agency action under the Administrative

Procedure Act."  Sullivan v. Hudson, 490 U.S. 877, 885 (1989).

The standard for how a hearing officer may respond to

direction from a district court can also be found in Sullivan.

In that case, Justice O'Connor wrote for the majority:

> Where a court finds that the Secretary has committed a
> legal or factual error in evaluating a particular
> claim, the district court's remand order will often
> include detailed instructions concerning the scope of
> the remand, the evidence to be adduced, and the legal
> or factual issues to be addressed . . . Deviation from
> the court's remand order in the subsequent
> administrative proceedings is itself legal error,
> subject to reversal on further judicial review.

Id. at 885-86.  In other words, it is legal error for the

hearing officer to reassess the case in a manner not authorized

by the remand order, and this Court reviews questions of law de

novo.  Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).

**2.    The Hearing Officer Exceeded the Scope of the**

**District Court's Order.**

In order to determine whether the Commissioner exceeded the

scope of remand in the present case there are two issues to

consider.  First, what precisely is the language of the order.

Second, what limits in scope that language implies.

**a.    The Language of the Order**

Colon contends that the district court instructed the Commissioner to:

> (1) Review and apply the rules in Social Security Ruling 00-4p, especially those concerning conflicts between vocational expert testimony and the Dictionary of Occupational Title, if applicable; and

> (2) Offer the claimant the opportunity for a hearing, take further action to complete the administrative record resolving the above issues, and issue a new decision.

Pl.'s Mot. 7; Admin. R. 904.

The Commissioner responds that the district court gave no such instruction because the language quoted above comes from the memorandum supporting the Commissioner's unopposed motion to remand rather than the judge's order itself.  Def.'s Mot. 11-12. The Commissioner argues that the order was for remand only, allowing the agency unfettered discretion.  Id.

In some cases when a claimant seeks judicial review of a denial of social security benefits, the Commissioner moves to remand the case rather than litigate it fully.  See e.g., Healy v. Berryhill, 266 F. Supp 3d 477, 478 (D. Mass. 2017) (Hillman, J.); Weinberg v. Barnhart, 288 F. Supp. 2d 82, 86 (D. Mass. 2003) (Neiman, M.J.).  In doing so in this case, the Commissioner included a memorandum in support of the decision and a proposed order for the judge to sign.  See Admin. R. 903-07; Def.'s Mem. Supp. Mot. Remand Agency, Ex. 1, Proposed Order, Colon v. Social Security Administration, Civ. A. No. 17-12053

(D. Mass. 2018), ECF No. 24-1 ("Commissioner's Proposed Order").[3]
Judge Burroughs issued an electronic order granting the motion.
Admin. R. 908.  She did not issue any further instructions.  Id.
Essentially, the dispute here is whether this means that Judge
Burroughs adopted the proposed language or not.

The better interpretation is that Judge Burroughs adopted
the language of the proposed order.  Hastings v. Berryhill
considered a similar question.  No. 17-cv-84-JL, 2019 WL
1451982, at *2 (D.N.H. Mar. 27, 2019).  The court there analyzed
a situation where a previous judge had granted the
Commissioner's motion for remand in "a one-word endorsed order."
Id.  The court explained in a footnote: "While [the] order
consisted of nothing more than the word 'granted,' the court
will follow the parties' lead and assume that [the judge]'s
order incorporated the . . . language from the Acting
Commissioner's motion for remand."  Id. at *2 n.2.

Unlike the present case, in Hastings the parties agreed
that the Commissioner's language was adopted, which the
Commissioner here disputes, id.; Def.'s Mot. 11-12, but this
difference does not change the analysis.  Judge Burroughs' order
granted the Commissioner's motion in its entirety, for which the

---

[3] The Proposed Order was omitted from the administrative
record, which contains only the Commissioner's Memorandum, but
they contain identical language.  Compare Admin R. 903-907, with
Commissioner's Proposed Order.

[12]

memorandum and proposed order were integral parts.  See Def.'s

Mot. Remand Agency, Colon, No. 1-17-cv-12053, ECF No. 23 (noting

that the memorandum and proposed order "are submitted

herewith").  This is not to say that Judge Burroughs necessarily

agreed with every word submitted in those papers, but it is fair

to assume that her order granting the motion relied upon and

adopted the Commissioner's specific representation to the Court

embodied in the proposed order.  Having persuaded Judge

Burroughs to remand on the basis of specific commitments, the

Commissioner must follow them.  This Court will not permit a

bait-and-switch maneuver.  Thus, the scope of the mandate is

governed by the language the Commissioner originally provided.

### b.    The Limitations of the Order

Following remand, the Appeals Council in turn vacated the

final decision of the Commissioner and remanded the case to the

hearing officer for further proceedings "consistent with the

order of the court."  Admin. R. 913.  The Appeals Council

provided detailed instructions to the hearing officer, including

to "[g]ive further consideration to the claimant's maximum

residual functional capacity" and "[o]btain supplemental

evidence from a vocational expert to clarify the effect of the

assessed limitations on the claimant's occupational base."  Id.

at 914.  The hearing officer went on to reassess the claimant's

RFC such that the newly assessed RFC was less restrictive than

the one originally assessed.  Compare id. at 31 (first

decision), with id. at 782-83 (second decision).  The hearing

officer relied upon the newly assessed RFC to come to an

unfavorable decision in the second review.  Id. at 786-89.

Colon argues that re-evaluating the RFC was an error under

the district court instructions because it violated the "mandate

rule."  Pl.'s Mot. 5.  In support of his contention, Colon

argues that district courts may limit the scope of remand and

that hearing officers' actions may not contradict those orders

either expressly or impliedly.  See id. at 6-7 (citing Steele v.

Astrue, No. 09-cv-548-DBH, 2011 WL 4635136, at *1 (D. Me. Oct.

5, 2011)).  Additionally, Colon notes that the mandate rule

"contemplates that a legal decision made at one stage of a

criminal or civil proceeding should remain the law of that case

throughout litigation, unless and until the decision is modified

or overruled by a higher court."  Id. at 6 (quoting Negrón-

Almeda v. Santiago, 579 F.3d 45, 50-51 (1st Cir. 2009)).  Colon

argues the Appeals Council's direction to the hearing officer to

reconsider the RFC and the hearing officer's compliance with

that direction was a harmful legal error.  Id. at 7-8.

The Commissioner responds that the re-evaluation of the RFC

was appropriate for two reasons.  First, he contends the first

decision was no longer binding, and the hearing officer on

remand properly relied on additional evidence and a longer

relevant period, which supported re-evaluating the RFC.  Def.'s
Mot. 11.  Second, he argues that because the order contained no
specific language limiting the scope of the remand, there was no
limitation.  Id. at 11-12.

Colon has the better of the argument, and accordingly it
was legal error for the Appeals Council to direct the hearing
officer to reassess the RFC.

As discussed above, the order should be understood as
adopting the Commissioner's Proposed Order.  That order does not
limit the scope of review, as in the more straightforward cases.
See Admin. R. 903-04; cf. Healy, 266 F. Supp 3d at 478 (denying
Commissioner's request to re-evaluate the entirety of a
partially favorable decision when the court had instructed the
Commissioner to consider only the RFC between the alleged onset
date and the determined onset date).  Yet it does not follow
from the lack of explicit limiting language that there is no
limitation.  Here, a number of factors suggest that the remand
order cabins the issues to be considered: (i) the remand order
contains "detailed instructions . . . concerning the legal or
factual issues to be addressed," Sullivan, 490 U.S. at 885; (ii)
the order lacks catch-all language to suggest a scope of issues
greater than the one identified; and (iii) the Appeals Council
directed the hearing officer to return to a step that was

[15]

analytically prior to the one the remand order identified. <u>See</u> Commissioner's Proposed Order; Admin R. 909-915.

### i.   The Detailed Instructions of the Remand Order

The detailed and specific instructions in the remand order suggest a limited scope of remand. The district court ordered review only of the vocational expert's testimony and how it cohered with the DOT. <u>See</u> Admin R. 904. As explained <u>supra</u> II.A., vocational expert testimony and its coherence with the DOT is relevant only to determine whether the claimant could return to past relevant work (step four) or whether the claimant could do any work available in large numbers in the national economy (step five), not to any prior steps. <u>See</u> 20 C.F.R. § 404.1566(e). The Commissioner argues that after the judicial remand, the Commissioner's original decision was no longer binding at all, which meant that it was appropriate to adjust the decision as a whole in accordance with new evidence. Def.'s Mot. 11. Yet the Commissioner was not free to "[d]eviat[e] from the court's remand order." <u>Sullivan</u>, 490 U.S. at 885-86. The order was sufficiently detailed as to imply a limited scope.

It is relevant context here that the Commissioner drafted the language of the remand order and the district court adopted it rather than drafting the language itself. Admin. R. 903-08. It suggests that the Commissioner, who has expertise in

disability determinations, saw a single issue that warranted re-evaluation on remand.  Cf. Purdy, 887 F.3d at 13 ("[I]ssues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]") (alterations in original and internal quotation marks omitted).  In this case one error was apparent enough that the Commissioner thought the case required re-evaluation with respect to that issue, but the Commissioner declined to note any other specific errors in need of re-evaluation, which strengthens the presumption that the issue identified is the only one that required re-evaluation.  Admin. R. 904.

### ii.  There is No Catch-All Language

The language adopted in the order contains no catch-all provision.  It merely instructs the hearing officer how to consider on remand the issue already identified.

The order reads in relevant part: "Offer the claimant the opportunity for a hearing, take further action to complete the administrative record resolving the above issues, and issue a new decision."  Admin R. 904.  One could argue that the lack of detail regarding the scope of the hearing and the direction to "issue a new decision" suggest that this is catch-all language that expands the issues that may be considered on remand, but such an interpretation is a stretch.  The language is not obviously catch-all (e.g., it does not say to "issue a new

[17]

decision consistent with this order and any other related issues
of law or fact"). <u>Cf.</u> Jon O. Newman, <u>Decretal Language: Last
Words of an Appellate Opinion</u>, 70 Brook. L. Rev. 727, 731 (2005)
(discussing the language appellate courts use for catch-all
remands).  Furthermore, the hearing officer is directed to
complete the record only for the identified issues.  Admin R.
904.  This direction in no way suggests that she is to use her
discretion to determine whether other areas of the record are in
need of completion, as in order to address the issue identified,
both a new hearing and a new decision would be necessary.  <u>See</u>
20 C.F.R. §§ 404.1566(e), 404.983.  In sum, the order does not
contain language to suggest that the Commissioner is to take up
a wider scope of issues than those identified in the order.

### iii. The Appeals Council Directed the Hearing Officer to Return to a Step Analytically Prior to the One at Issue

The RFC determination is analytically prior to findings at
steps four and five and, in fact, how steps four and five come
out depends on the RFC finding.  20 C.F.R. § 404.1520(e).
Consideration of how a vocational expert's testimony coheres
with DOT jobs does not require any particular RFC and certainly
does not require, from an analytical standpoint, that a hearing
officer reconsider her RFC finding.  <u>See</u> SSR 00-4p, 2000 WL
1898704 (Dec. 4, 2000).  The Appeals Council's direction that

[18]

the hearing officer consider a step in the sequential evaluation analytically prior to the one the district court identified is therefore beyond the scope of the remand.

Hastings v. Berryhill illustrates this reasoning.  No. 17-cv-84-JL, 2018 WL 4350250 (D.N.H. Sept. 12, 2018).  In that case, the district court found legal error in a hearing officer's rescission of his finding that the claimant's carpal tunnel syndrome qualified as a severe impairment, when he had been instructed by the district court on remand to "reassess the plaintiff's maximum [RFC] . . . with reference to specific evidence of record in support of the assessed limitations."  Id. at *3 (omission and emphasis in original).  The problem there was that the district court's original order instructed the hearing officer to reassess the claimant's RFC, which is between steps three and four of the sequential evaluation, and the hearing officer took the opportunity to alter his findings at step two.  See id.  This was problematic because the step two findings are used to assess the RFC, and the removal of impairments can make the RFC less restrictive.  See 20 C.F.R. § 404.1520(a)(4)(iii).  Similarly, in the present case, the RFC determination affects the inquiry at steps four and five, exactly where the district court ordered the hearing officer to make corrections.  In short, the Appeals Council directed the hearing officer to commit legal error by instructing him, in a

[19]

way that clashed with the district court's order, to reassess a
prior step in the inquiry that would have downstream effects on
the issue the district court identified.

### 3.    The Legal Error Was Harmful.

The hearing officer's consideration of factors beyond the
scope of the mandate was harmful, warranting remand.

The hearing officer's reassessment, based on the Appeals
Council instructions, contained several significant changes to
Colon's RFC.  In the original decision, Colon was limited to
three hours of walking or standing, while in the second
decision, no walking or standing limitations appeared.  Admin R.
31 (first decision), 782-83 (second decision).  This alteration
in the RFC changed what kinds of jobs Colon theoretically could
perform.  See SSR 83-10, 1983 WL 31251 (Jan. 1, 1983).  The
first RFC meant that Colon would be capable of only certain
light work, due to the stand/walk limitation of three hours a
day.  Id. at *5-6 ("[A] job is . . . [light as opposed to
sedentary] when it requires a good deal of walking or standing .
. . the full range of light work requires standing or walking,
off and on, for a total of approximately 6 hours of an 8-hour
workday.").  The second RFC contained no stand/walk limitation,
which indicates Colon would be capable of the full range of
standing, light work rather than merely a fraction of it,
substantially expanding his occupational base.  See id.

[20]

The hearing officer also altered the RFC to indicate that Colon was capable of frequently handling objects in both hands, whereas in the earlier decision he could do it "no more than occasionally." Admin. R. 31, 782. The lack of handling restrictions in the second RFC meant that jobs that under the earlier decision would have required too much handling for Colon's capabilities were now considered available to him, further expanding Colon's occupational base. See SSR 83-14, 1983 WL 31254, at *2 (Jan. 1, 1983) ("[limitations on] using the fingers and finger tips to work with small objects . . . can affect the capacity to perform certain jobs at all levels of physical exertion. An entire range of jobs can be severely compromised.").

Together, these rulings expanded Colon's occupational base, which means that the new RFC (made in error) suggests that Colon could perform jobs that his original RFC would not allow. See SSR 83-10; 20 C.F.R. Part 404, Subpart P, App. 2. These changes in the RFC are the difference between Colon's being assessed as capable of a limited subset of light work and being assessed as capable of a substantially larger subset. See SSR 83-10, 83-14. This widened occupational base supported the hearing officer's conclusion at step five of the sequential evaluation that there were jobs that exist in significant numbers in the national economy that Colon could perform. Admin. R. 787.

[21]

Upon finding of error, this Court will not reverse the
Commissioner's decision if the error is "harmless."  <u>See</u> <u>Perez</u>
<u>Torres</u> v. <u>Secretary of Health and Human Servs.</u>, 890 F.2d 1251,
1255 (1st Cir. 1989).  Here, there it is likely that the hearing
officer's error substantially influenced the outcome.  The
hearing officer in this case based the step four and five
analysis on an inappropriate revision to the step three
analysis, a revision that might be outcome determinative.  As
this error was not harmless, the Court remands with instructions
to use the original RFC determination and reassess steps four
and five in light of that RFC.

**III. CONCLUSION**

For the reasons given above, the Court GRANTS the motion to
reverse the decision of the Commissioner and remands the matter
for proceedings consistent with this opinion.  This Court DENIES
the Defendant's motion to affirm the decision of the
Commissioner.


**SO ORDERED.**

/s/ William G. Young_
WILLIAM G. YOUNG
DISTRICT JUDGE